OPINION
{¶ 1} Defendant-appellant Joseph Wyrick, appeals from his conviction and sentence in the Licking County Court of Common Pleas on one count of Burglary a felony of the second degree in violation of R.C. 2911.12(A) (2). The plaintiff-appellee is the State of Ohio.
 {¶ 2} This case was tried on two occasions; the first trial resulting in a mistrial when the jury came back unable to reach a unanimous verdict. On retrial, a second jury found the Appellant guilty of this offense.
 {¶ 3} On April 5, 2004, Cynthia Peltier was home alone, working in her home office, located in the basement of her home. She heard a crashing noise from upstairs, and went to investigate, assuming her cat had caused the trouble. Upon looking around upstairs, she saw what she described as a person's legs appearing to be in a kneeling or genuflecting position. She screamed at the person to get out of her home. Ms. Peltier quickly called 911 from a cordless telephone. She watched through windows and glass doors as the person ran back towards her bedroom, then around the home to the driveway. She described seeing a black car with a flame paint job on the sides, and testified as to the license plate number. Ms. Peltier testified that when the man got to the car, he turned, looked at her then pointed at her.
 {¶ 4} Officers responded to the scene. They spoke to Ms. Peltier and got a description of the subject, as well as a description of the vehicle. A window in a bathroom was found to have been forced open, and the area around the window was processed. Fingerprints were removed from the area, but were later determined to be Ms. Peltier's husband's prints. Officers also observed a television that Ms. Peltier told them was moved out of the bedroom, as well as a VCR lying broken on the floor, presumably pulled from a shelf when the television, to which it was connected, was moved. Ms. Peltier told officers, and also testified that a jewelry box was missing.
 {¶ 5} Officers ran the license plate, which came back to a black Chevrolet Beretta with a flame paint job, belonging to Renee Clark of Columbus. Ms. Clark testified that she did, in fact, own that vehicle, and that her "mate", the Appellant, had access to the vehicle on the date in question.
 {¶ 6} Appellant's photo was placed into a photo array. This photo array was shown to Ms. Peltier, who identified the appellant as being the subject she observed on April 5, 2004 at her home. Ms. Peltier identified the appellant at trial as being the same man she observed at her home on April 5, 2004.
 {¶ 7} After the appellant was indicted, he filed, through trial counsel, a Motion to Suppress the identification, alleging that the photo array was unduly suggestive. This Motion was overruled after a full hearing, including testimony from Ms. Peltier as to her identification.
 {¶ 8} The second jury trial commenced on August 23, 2005 and concluded with the jury finding appellant guilty of burglary. The trial court proceeded to sentence appellant to a term of four years in a state penal institution consecutive to a term appellant was already serving at the time of trial.
 {¶ 9} Appellant was appointed counsel who timely filed a Notice of Appeal raising the following assignment of error for our consideration:
 {¶ 10} "I. THE VERDICT OF THE JURY WAS BASED UPON LEGALLY INSUFFICIENT EVIDENCE."
 I. {¶ 11} In his sole Assignment of Error, appellant maintains that his conviction is against the sufficiency of the evidence. We disagree.
 {¶ 12} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar.15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v.Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 13} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 14} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin
(1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 15} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735.
 {¶ 16} In determining whether a conviction is against the manifest weight of the evidence, an appellate court: "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 17} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and Findings of Fact of the trial court. Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons
(1998), 82 Ohio St.3d 438, 444, citing State v. Jenks,61 Ohio St.3d at 273. Therefore, this Court's "discretionary power * * * should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; See, also, Otten,33 Ohio App.3d at 340.
 {¶ 18} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v.Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 19} To find the appellant guilty of burglary as alleged in the indictment the trier of fact would have to find that appellant "by force, stealth, or deception" "[t]respass[ed] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 20} The trial court in the case at bar instructed the jury that "force means any violence, compulsion or constraint exerted by any means upon or against a thing or person to gain entrance.
 {¶ 21} "Stealth means any secret, sly or clandestine act to gain entrance.
 {¶ 22} "Deception means knowingly deceiving or causing another to be deceived by any-false or misleading representation or by any other conduct, act or omission which creates, confirms or perpetuates a false impression in another to gain entrance.
 {¶ 23} "Any entrance knowingly made in a structure, residence, dwelling or `building of another is unlawful if it is without authority consent or privilege to do so.
 {¶ 24} "Knowingly means that the Defendant was aware of what he was doing and of his lack of authority or privilege.
 {¶ 25} "* * *
 {¶ 26} "Purpose to deprive the owner of property without their consent, a theft offense, is an essential element of the crime of burglary. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to commit a theft offense.
 {¶ 27} "* * *
 {¶ 28} "Deprive means to withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon the payment of a reward or other consideration dispose of property so as to make it unlikely the owner will recover it; accept, use or appropriate money, property or service with purpose not to give proper consideration in return therefore, and without reasonable justification or excuse for not giving proper consideration". (T. at 212-14).
 {¶ 29} The parties do not assign as error the trial court's jury instructions.
 {¶ 30} Appellant first argues that the evidence is insufficient to establish that appellant was the perpetrator of the offense.
 {¶ 31} The homeowner, Cynthia Peltier testified that on April 5, 2004 she was at home alone, working in her home office located in the basement of the home. (T. at 100). Upon hearing a "crashing loud noise" she went upstairs to investigate. (Id. at 1001-01). Upon looking around, she described seeing a person's legs in the kneeling or genuflecting position at the end of the hallway. (Id. at 104). She screamed, dialed 911 and observed the person as he made his way to her driveway. (Id. at 105-109). Ms. Pelitier observed a black car with a flame paint job behind the front wheels. (Id. at 125). She wrote down the license number of the car. (Id. at 126). She further testified "once he was in the car, he looked at me. Yes. I looked right at him and he pointed his finger at me like this." (Id. at 110). The police eventually traced the license plate number to a car owned by Renee Clark.
 {¶ 32} Renee Clark testified that she and the appellant are "partners." (T. at 139). She owns a black Chevrolet Beretta with a flame paint job behind the front wheels. (Id. at 139). The car had the same license plate number as Ms. Pelitier had written down during the incident. (Id. at 140). Ms. Clark testified that appellant had access to the car in both March and April, 2004. (Id.).
 {¶ 33} Viewing this evidence linking appellant to the burglary of Ms. Peltier's home in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant was the person inside the home.
 {¶ 34} We hold, therefore, that the state met its burden of production regarding identification of the perpetrator and, accordingly, there was sufficient evidence to support appellant's convictions. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 35} Appellant next argues that there was insufficient evidence to show that intruder was inside the home with the purpose to commit a theft offense.
 {¶ 36} Ms. Pelitier testified that a jewelry box was missing from the dresser in her bedroom. (T. at 116). She further testified that a TV that had been inside another bedroom of the home was found sitting in the hallway and the VCR which had been hooked-up to that TV was laying broken on the bedroom floor. (Id. at 117).
 {¶ 37} The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. State v. Garner
(1995), 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634;State v. Wallen (1969), 21 Ohio App.2d 27, 34, 254 N.E.2d 716,722.
 {¶ 38} We hold, therefore, that the state met its burden of production regarding the commission of a theft offense and, accordingly, there was sufficient evidence to support appellant's convictions. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 39} Finally, appellant argues that the evidence was insufficient to establish that entrance to the home was gained by force, stealth or deception.
 {¶ 40} Ms. Pelitier testified that she had not given her permission for anyone other than her husband to be in the home on the date in question. (T. at 118). She further testified that when she came upstairs to investigate the crashing, loud noise, the side door of the kitchen was standing wide open. (Id. at 102-3). She had not opened that door. (Id.). The investigating officer testified that he found pry marks on a bathroom window at the back part of the home. (Id. at 146).
 {¶ 41} We hold, therefore, that the state met its burden of production regarding the entry of the home by either force or stealth and, accordingly, there was sufficient evidence to support appellant's convictions. Although appellant cross-examined the witnesses in an attempt to establish that the evidence was insufficient to identify appellant as the perpetrator, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 42} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant "[t]respass[ed] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 43} Accordingly, appellant's conviction for burglary is not against the manifest weight of the evidence.
 {¶ 44} Appellant's sole Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs to appellant.