OPINION
{¶ 1} Defendant-Appellant, Jack W. McCrory, appeals his conviction for Assault, following a bench trial in the Portage County Municipal Court, Ravenna Branch. For the following reasons, we affirm McCrory's conviction.
 {¶ 2} McCrory's trial occurred on September 13, 2005. McCrory did not retain counsel. Prior to trial, the court inquired of McCrory "why don't you have an attorney?"
 {¶ 3} "McCrory: I didn't think I needed one.
 {¶ 4} "The Court: You didn't think you needed one?
 {¶ 5} "McCrory: No.
 {¶ 6} "The Court: O.K. It's your choice though? It's not because you can't afford one?
 {¶ 7} "McCrory: Yes, ma'am.
 {¶ 8} "The Court: O.K. Have you ever participated in a trial before?
 {¶ 9} "McCrory: No, ma'am.
 {¶ 10} "The Court: Well, let me just explain how it's going to proceed."
 {¶ 11} Thereupon, the court gave McCrory a brief description of trial procedure.
 {¶ 12} The first witness to testify at trial was Deputy Brett Psenicka of the Portage County Sheriff's Office. Deputy Psenicka testified that, on the evening of June 14, 2005, he was dispatched to the "Calcic" residence, on Infirmary Road, Ravenna, Ohio. There, Deputy Psenicka met Elizabeth A. Ziegler. Deputy Psenicka described Ziegler as "fairly bloody, disheveled. Looked like she'd been crying. She had abrasions to knees, legs, arms. Bloody face." Deputy Psenicka took photographs of Ziegler which were admitted at trial.
 {¶ 13} According to Deputy Psenicka, Ziegler told him that she had been assaulted earlier by McCrory and her boyfriend, Donald Petit. Ziegler told Psenicka that she had been at McCrory's residence on Knowlton Road in Windham Township. McCrory and Petit had punched, kicked, and slapped her while forcing her into a van. McCrory and Petit then drove her to the Calcic residence where they dropped her off.
 {¶ 14} Ziegler testified that she did not wish to press charges against McCrory. Ziegler testified that she was drunk at the time of the incident and "out of control." Ziegler testified that Petit caused most of her injuries, but that McCrory did "swing back" and hit her in the mouth twice while they were driving her to the Calcic's residence.
 {¶ 15} McCrory denied ever hitting Ziegler. McCrory testified that Ziegler and Petit had been wrestling and that Petit had forced her in the back of his car. McCrory wanted to take Ziegler to her friend's house because Ziegler was drunk and causing a disturbance. McCrory did not recall seeing any injuries on Ziegler's face that evening.
 {¶ 16} The court found McCrory guilty of Assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A). The court sentenced McCrory to a 180-day suspended sentence, pending the successful completion of one year supervised probation. The court further ordered McCrory to pay a $100 fine as well as Ziegler's uncovered medical expenses.
 {¶ 17} McCrory timely appeals and raises the following assignments of error.
 {¶ 18} "[1.] The Court committed reversible error when it allowed Appellant to proceed without counsel without making sufficient inquiry to determine whether he knowingly, voluntarily and intelligently waived his right to counsel, in violation of the sixth andfourteenth amendments to the United States Constitution.
 {¶ 19} "[2.] The Court committed reversible error when it entered a conviction that was not supported by the manifest weight of the evidence, in violation of the Fifth and Fourteenth amendments to the United States Constitution.
 {¶ 20} "[3.] The Court committed reversible error when it convicted Appellant without sufficient evidence upon which it could reasonably conclude that Appellant had committed all elements of the crime defined at R.C. 2903.13 beyond a reasonable doubt."
 {¶ 21} Under the first assignment of error, McCrory argues the court erred by allowing him to proceed with his defense pro se without first inquiring whether his waiver of that right was knowing and intelligent.[1] We agree.
 {¶ 22} "The Sixth Amendment, as made applicable to the states by theFourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when hevoluntarily, and knowingly and intelligently elects to do so." State v.Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citingFaretta v. California (1975), 422 U.S. 806 (emphasis added). "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." State v.Wellman (1974), 37 Ohio St.2d 162, paragraph one of the syllabus, citingArgersinger v. Hamlin (1972), 407 U.S. 25 (emphasis added).
 {¶ 23} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right."Gibson, 45 Ohio St.2d 366, paragraph two of the syllabus. "Presuming a waiver of the Sixth Amendment right of an accused to the assistance of counsel from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." Wellman, 37 Ohio St.2d 162, paragraph two of the syllabus, citing Carnley v. Cochran (1962),369 U.S. 506.
 {¶ 24} Pursuant to Criminal Rule 44(C), "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." Criminal Rule 22 provides that waiver of counsel "may be recorded in shorthand, or stenotype, or by any other adequate mechanical, electronic or video recording device."
 {¶ 25} Construing these precedents and rules, this court has recognized that "a trial court is obligated," that is, has an affirmative duty, "to engage in a dialog with the defendant which will inform her of the nature of the charged offenses, any 'included' offenses, the range of possible punishments, any possible defenses, and any other facts which are essential for a total understanding of the situation." State v. Mogul, 11th Dist. No. 2003-T-0178, 2006-Ohio-1873, at ¶ 20 (citation omitted).
 {¶ 26} In the present case, the trial court did not engage in any dialog with McCrory regarding the nature of the charged offense, the range of possible punishments, possible defenses, or any other matters that would apprise McCrory "of the inherent difficulties in attempting to represent [him]self throughout a criminal case." Id. The trial court's dialog with McCrory was wholly limited to whether he was able to obtain counsel. This colloquy is inadequate to establish that McCrory's waiver of counsel was knowing and intelligent. Cf. State v.Boughner (Dec. 17, 1999), 11th Dist. No. 98-G-2161, 1999 Ohio App. LEXIS 6116, at *20-*21 ("a waiver of counsel is knowing, intelligent, and voluntary only when the defendant is made aware of the dangers and disadvantages of self-representation such that the record establishes that the defendant knowingly made the choice with his eyes wide open").
 {¶ 27} The State argues that the trial court is only required to obtain a knowing, intelligent, and voluntary waiver of counsel when the defendant is "unable to obtain counsel." The State relies on the "plain language" of Criminal Rule 44(B), which provides that, "[w]hen a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."
 {¶ 28} The State's reliance of Criminal Rule 44(B) is misplaced. Although this provision is concerned specifically with defendants "unable to obtain counsel," the rights to counsel and to self-representation embodied in the Sixth Amendment apply regardless of whether an accused is able to obtain independent counsel. The mandate of the Ohio Supreme Court is clear and unequivocal: "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." Wellman, 37 Ohio St.2d 162, paragraph one of the syllabus. The requirement that a knowing and intelligent waiver be obtained before a defendant proceeds to represent himself pro se pertains to all criminal defendants facing potential imprisonment.
 {¶ 29} The first assignment of error has merit. Where a defendant has been convicted of a petty offense without the benefit of counsel and without executing a valid waiver of counsel, any sentence of confinement must be vacated although the conviction itself is affirmed.Mogul, 2006-Ohio-1873, at ¶ 26; Boughner, 1999 Ohio App. LEXIS 6116, at *23-*27.
 {¶ 30} The reason is that "the right to appointed counsel under theSixth and Fourteenth Amendments in state criminal proceedings is limited to cases that lead to actual imprisonment. Consequently, by vacating anyterm of confinement imposed on an unrepresented misdemeanant, anypotential violation of the constitutional right to counsel is therebyeradicated. In other words, if the jail time is thrown out on appeal, then there is no cognizable violation of the Sixth Amendment right to counsel because, as the Supreme Court of Ohio has held, `uncounseled misdemeanor convictions are constitutionally valid if the offender is not actually incarcerated.'" Boughner, 1999 Ohio App. LEXIS 6116, at *25-*26 (emphasis sic), citing State v. Brandon (1989),45 Ohio St.3d 85, 86.
 {¶ 31} Accordingly, McCrory's one hundred eighty day suspended sentence is vacated. See Alabama v. Shelton (2002), 535 U.S. 654, 662
("[a] suspended sentence is a prison term imposed for the offense of conviction" for the purposes of the Sixth Amendment).
 {¶ 32} McCrory argues under his second assignment of error that his conviction is against the manifest weight of the evidence. In order to convict McCrory of Assault, the State was required to prove, beyond a reasonable doubt, that McCrory "knowingly cause[d] or attempt[ed] to cause physical harm to another." R.C. 2903.13(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 33} The argument that a conviction is against the manifest weight of the evidence raises a factual issue regarding the credibility of the State's evidence, that is, "the inclination of the greater amount ofcredible evidence." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52 (emphasis sic) (citation omitted). "It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. (citation omitted) (emphasis sic).
 {¶ 34} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 35} McCrory argues that Ziegler's testimony is completely lacking in credibility. McCrory notes that Ziegler was admittedly drunk and that she had no "independent recollection of which injuries were caused by whom, or where they were caused." We disagree.
 {¶ 36} Ziegler testified, without doubt or uncertainty, that McCrory struck her in the mouth. Ziegler was uncertain about the injury McCrory may have caused her mouth, testifying that McCrory "maybe" caused "part of it [the bloody mouth]." However, it is not necessary that Ziegler identify a specific injury, since McCrory could be convicted for attempting to cause harm by striking her.
 {¶ 37} Deputy Psenicka and the photographic evidence established that Ziegler had a bloody mouth. Ziegler testified that McCrory struck her twice in the mouth. Contrary to this competent and credible evidence that McCrory caused or attempted to cause Ziegler physical harm is McCrory's denial that he ever struck Ziegler. Where there is conflicting competent and credible evidence regarding the facts of a case, the appellate court will defer to the determination made by the trier of fact. See, e.g., State v. Cooper, 11th Dist. No. 2005-A-0025,2006-Ohio-869, at ¶ 29; State v. Reed, 11th Dist. No. 2004-T-0117,2005-Ohio-6901, at ¶ 31.
 {¶ 38} McCrory's second assignment of error is without merit.
 {¶ 39} McCrory argues under his third assignment of error that there was insufficient evidence to support his conviction. "We have consistently held that an appellant must move for a Crim.R. 29 motion for acquittal at trial in order to preserve the right to appeal on the basis of the sufficiency of the evidence." State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 21 (citations omitted). McCrory failed to do so and, therefore, has waived the right to raise this argument.
 {¶ 40} The determination that McCrory's conviction is not against the manifest weight of the evidence, however, necessarily rests on the existence of sufficient evidence to support the conviction. Cf.Thompkins, 78 Ohio St.3d at 388, quoting Tibbs v. Florida (1982),457 U.S. 31, 41, 72 L. Ed. 2d 652, 102 S. Ct. 2211 ("A reversal based on the weight of the evidence * * * can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.") (emphasis sic). In other words, unless there were competent and credible evidence of each element of the crime, it would be impossible to determine whether the weight of that evidence supported the conviction. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, 1997 Ohio App. LEXIS 4255, at *5 ("a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency"); accord State v. Santana, 8th Dist. No. 87170, 2006-Ohio-3843, at ¶ 25; State v. Wyrick, 5th Dist. No. 2005-CA-89, 2006-Ohio-1919, at ¶ 15; State v. Braxton, 10th Dist. No. 04AP-725, 2005-Ohio-2198, at ¶ 15; Willoughby v. Wutchiett, 11th Dist. No. 2002-L-165, 2004-Ohio-1177, at; ¶ 8 State v. Hinojosa, 12th Dist. No. CA2003-05- 104, 2004-Ohio-1192, at ¶ 12; State v. Williams, 6th Dist. No. L-02-1221, 2004-Ohio-4856, at ¶ 11.
 {¶ 41} The third assignment of error is without merit.
 {¶ 42} For the foregoing reasons, McCrory's first assignment of error has merit. McCrory's 180-day suspended sentence is vacated. McCrory's remaining assignments of error are meritless. Accordingly, McCrory's conviction for Assault is affirmed.
[1] For the purposes of waiving counsel, McCrory's offense is considered a "petty offense." A "petty offense" is defined as "a misdemeanor other than a serious offense," i.e. other than a misdemeanor "for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(D) and (C). For Assault, a first degree misdemeanor, the maximum potential jail term "shall be * * * not more than one hundred eighty days." R.C. 2929.24(A)(1).