[Cite as *State v. Studer*, 2021-Ohio-3177.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

MICHAEL L. STUDER,

        Defendant-Appellant.

CASE NO. 2020-P-0076

Criminal Appeal from the
Municipal Court,
Ravenna Division

Trial Court No. 2020 CRB 01010 R

**O P I N I O N**

Decided: September 13, 2021
Judgment: Modified and affirmed as modified

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul J. Mooney*, Law Office of Paul J. Mooney, 6579 Wilson Mills Road, Mayfield Village, OH 44143 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Michael L. Studer, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, finding him guilty of Violating a Protection Order. For the following reasons, we modify the judgment of the lower court and affirm as modified.

{¶2} On June 1, 2020, a complaint was filed in the Portage County Municipal Court, Ravenna Division, alleging that Studer had committed the offense of Violating a

Protection Order, a misdemeanor of the first degree, in violation of R.C. 2919.27.

{¶3} Pursuant to a June 3, 2020 Judgment Entry, Studer appeared for arraignment without counsel and pled not guilty. A personal recognizance bond was set and a no contact order was put into place.

{¶4} A pretrial report was filed on June 15, 2020, which noted the matter was set for trial and that defendant "would not sign a time waiver." On July 20, 2020, prior to the commencement of trial, the following conversation occurred between the judge and Studer:

> The Court: You understand, Mr. Studer, you have the right to have an attorney. If you can't afford one, the Court would appoint one to represent you.
>
> Studer: Um, I can't use the Public Defenders because of what happened with them, and I can't afford an attorney and I also - - no attorney wants these cases, your Honor.
>
> The Court: Did you apply for the Public Defender?
>
> Studer: I got a notice from the Public Defender on our last case they were colluding * * * with another judge, and I'm not trying to get them involved with it anymore.
>
> The Court: I just want to make sure you understand you have the right to be represented by an attorney. If you can't afford one the court would appoint one.
>
> Studer: I cannot afford an attorney, your Honor.
>
> The Court: Well, what I need to know is did you apply for the Public Defender?
>
> Studer: I cannot use the Public Defender.
>
> The Court: You're not answering my question, Mr. Studer.
>
> Studer: I did not apply for the Public Defender, your Honor. No, I did not.

2

The Court:     Then I can't help you.  If you apply - - just so you know going forward.  * * * I want you to understand this going forward so if you find yourself in a situation where you need representation and you can't afford it, you still apply for the Public Defender.  If the Public Defender has a conflict a private attorney is appointed to represent you.

Studer:        Okay.  I didn't know that, your Honor.

The Court:     All right.  Other than that are you ready to proceed?

Studer:        Yes, your Honor.

The matter proceeded and the following testimony was presented.

{¶5}    Amy Turos previously dated Studer and shares a child with him.  In June 2019, she received a protection order against Studer.  She testified that she sought the order because he had assaulted her in the past and subsequently entered her house without her permission when dropping off their son.

{¶6}    A copy of the Domestic Violence Civil Protection Order, filed June 14, 2019, was presented into evidence.  It provides, in pertinent part, that Studer:

> shall not initiate or have any contact with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers.  Contact includes but is not limited to landlines, cordless, cellular, or digital telephone; text; instant messaging; fax; e-mail; voice mail; delivery service; social networking media; blogging; writings; electronic communications; or communications by any other means directly or through another person.  Respondent may not violate this order even with the permission of a protected person.

It further set forth that "[v]isitation orders do not permit respondent to violate the terms of this order."  It suspended Studer's visitation rights with their child pending further order of the juvenile court.

{¶7}    Pursuant to an August 9, 2018 Judgment Entry from the Portage County Court of Common Pleas, Juvenile Division, Turos had been granted custody of their child and Studer was provided with standard visitation.  They were also ordered to sign up for

3

the Our Family Wizard app and "communicate with each other regarding their son on Our Family Wizard." Following the issuance of the protection order, on July 1, 2019, the court ordered that it would not reduce Studer's visitation and the August 2018 visitation order would remain in effect.

{¶8} Turos testified that on May 20, 2020, she sent a message to Studer through the Talking Parents app, which she and Studer used rather than Our Family Wizard to communicate about their son. The message provided Studer with information about her plans for their son's summer school. Studer responded with the following message:

> Please make sure that my name is on all his contact info to the school, I would like to have a nice exchange of power at our court hearing. I'm getting full custody you know that right. He can stay at garrettsville schools I like Mrs. Pae, she's a friend of our family, and Uncle Mike can keep an eye on him for us too since he's the history teacher and head football coach at the highschool. If I file this appeal to the supreme Court it's over! And multiple servants of the people will lose their jobs, I told you I will tear that place to the ground and I'm using law to do it. And I've been told by lots of really good attorneys that I would be an amazing attorney. And the fact that my friends (very very respected in that business) say you're not making friends, you have more problems than just me! My advice to you would be to be good from now on, they are watching you.

{¶9} Turos testified that she believed he was referring in part to trying to get her law license revoked and had previously threatened to file grievances against her. She felt threatened by his message and believed he was trying to intimidate her.

{¶10} Deputy Robert Burris of the Portage County Sheriff's Office spoke with Turos regarding the message sent by Studer and testified that she seemed upset. He reviewed the message from Studer and determined the protection order was violated.

{¶11} Studer testified that he and Turos had been involved in custody proceedings in relation to their child and although he brought contempt proceedings in their custody dispute, he does not want Turos "getting in any trouble." He stated that the

4

communications he sent to Turos related to custody issues and her potentially losing her job, which he believed affected the child.

{¶12} On July 20, 2020, the court issued an entry finding Studer guilty of the offense as charged. On August 28, 2020, the court ordered Studer to pay a $250 fine and costs, serve 180 days in jail with 179 days suspended and credit for one day in jail and one year of supervised probation.

{¶13} Studer filed a notice of appeal. This court remanded for the issuance of an entry in compliance with Crim.R. 32(B). On September 30, 2020, the trial court issued a compliant entry that stated both the offense for which Studer was convicted and the penalties referenced above. Subsequently, this court requested that the parties submit supplemental briefing on the issue of whether Studer's term of probation should be vacated if this court finds he was improperly denied the right to counsel.

{¶14} On appeal, Studer raises the following assignments of error:

{¶15} "[1.] The trial court erred to the prejudice of appellant in depriving his constitutional right to appointed counsel.

{¶16} "[2.] The evidence presented against appellant was insufficient to establish recklessness thereby violating appellant's due process rights under the Constitution.

{¶17} "[3.] The judgment of conviction against appellant was against the manifest weight of the evidence."

{¶18} In his first assignment of error, Studer argues that the lower court erred by ordering the trial to go forward when he was unrepresented by counsel and he did not waive the right to counsel. He highlights various ways in which having the assistance of counsel could have impacted the result of the proceedings.

5

{¶19} The State argues that the court gave advisements regarding the right to counsel as required by Crim.R. 22 and 44(B). It contends that Studer was unwilling to avail himself of the procedure necessary to receive appointed counsel by applying for a public defender and he waived his right to counsel.

{¶20} "Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, a criminal defendant has the right to assistance of counsel for his defense." (Citation omitted.) *State v. Moore*, 11th Dist. Trumbull No. 2015-T-0072, 2017-Ohio-7024, ¶ 15. In relation to the appointment of counsel, Crim R. 44(B) applies here, since the offense committed was a petty offense, i.e., a misdemeanor for which the penalty is not more than six months. Crim.R. 2(C) and (D). Pursuant to Crim.R. 44(B), "[w]here a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon the defendant, unless after being fully advised by the court, the defendant knowingly, intelligently, and voluntarily waives assignment of counsel." *Also State v. Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915 (1974), paragraph one of the syllabus ("[a]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial"). "[C]ourts must 'indulge in every reasonable presumption against waiver' of the right to counsel." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 29, citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). "[T]he state bears the burden of overcoming the presumption against a valid waiver." *State v. Karnofel*, 11th

6

Dist. Trumbull No. 2015-T-0070, 2017-Ohio-428, ¶ 11.

{¶21} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Ross*, 2017-Ohio-709, 86 N.E.3d 44, ¶ 21 (11th Dist.), citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. A waiver cannot be presumed from a silent record; rather, "[t]he record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer." (Citation omitted.) *Wellman* at paragraph two of the syllabus.

{¶22} Studer engaged in a conversation with the court regarding representation of counsel and stated he could not afford an attorney. The court explained his right to counsel and informed him of the process to have a public defender appointed. Studer expressed that he "cannot use the Public Defender" because he believed they were "colluding" in a past case. The court replied: "Then I can't help you. * * * I want you to understand this going forward so if you find yourself in a situation where you need representation and you can't afford it, you still apply for the Public Defender. If the Public Defender has a conflict a private attorney is appointed to represent you." Studer responded that he "didn't know that." Immediately after, the court inquired whether he was ready to proceed to trial, to which he responded affirmatively.

{¶23} We do not construe the foregoing as waiver of the right to counsel. Studer did not state he wanted to waive the right to counsel, nor did the court inquire if he wished to do so. He expressed what amounted to an alleged conflict with the public defender and, once the process for obtaining appointed counsel was explained, he stated he had

7

been unaware of that process. At no time did he state that he wished to represent himself; rather, the matter proceeded without him making any comments as to the issue of waiver. Although Studer agreed he was ready to proceed after the discussion of counsel, this court has held that acquiescence with proceeding forward when given no alternative options does not constitute waiver. *See State v. Bradley-Lewis*, 2020-Ohio-3563, 155 N.E.3d 25, ¶ 28 (11th Dist.) ("From his interactions with the court, this was not a scenario where he requested to proceed pro se but one where he appeared to accept that this was the only choice available. Even if his acquiescence to the court's requirement that he proceed pro se constituted waiver, such waiver cannot be found to have been intelligently given.").

{¶24} Further, as to the advisements made to Studer regarding his right to counsel, this court has held that a valid waiver "cannot be inferred" when the court has not "engaged in any meaningful dialogue as to the inherent risks of proceeding pro se." *State v. Gabel*, 11th Dist. Ashtabula No. 2008-A-0076, 2009-Ohio-3792, ¶ 41; *Ross*, 2017-Ohio-709, at ¶ 24 ("a waiver of counsel is knowing, intelligent, and voluntary only when the defendant is made aware of the dangers and disadvantages of self-representation such that the record establishes that the defendant knowingly made the choice with his eyes wide open") (citation omitted); *see also State v. Mogul,* 11th Dist. Trumbull No. 2003-T-0178, 2006-Ohio-1873, ¶ 20 (the court must inform the defendant of "the nature of the charged offenses, any 'included' offenses, the range of possible punishments, any possible defenses, and any other facts which are essential for a total understanding of the situation"). We do not find that the references to the right to counsel were sufficient to constitute a "meaningful dialogue as to the inherent risks of proceeding

8

pro se." As outlined above, there was no discussion relating to Studer representing himself pro se or what that would entail. When making the advisements about his right to counsel, the court did not explain the nature of offenses or the penalties Studer faced before proceeding to trial without counsel.[1] The record does not demonstrate a voluntary and intelligent waiver of counsel in these circumstances. *See Karnofel*, 2017-Ohio-428, at ¶ 19 ("We find nothing that could be construed as a dialogue warning Karnofel of the dangers attendant to self-representation. There was no inquiry directed to Karnofel to ascertain if she understood the seriousness of the trial and the potential consequences to her liberty. Absent such warning and inquiry, the court failed to comply with Crim.R. 44 and the presumption against a knowing, intelligent and voluntary waiver of the right to counsel is not rebutted.").

{¶25} For the foregoing reasons, we hold that Studer did not waive his right to counsel. Although he requests a new trial on this ground, the proper remedy "[w]here a defendant has been convicted of a petty offense without the benefit of counsel and without executing a valid waiver of counsel" is that "any sentence of confinement must be vacated although the conviction itself is affirmed." *Gabel* at ¶ 43, citing *State v. McCrory*, 11th Dist. Portage No. 2006-P-0017, 2006-Ohio-6348, ¶ 29; *Bradley-Lewis* at ¶ 33. We must vacate the suspended sentence since it is a term of confinement. As to the term of probation, where a defendant is denied the right to counsel in a petty offense, courts have

---

1. No transcript of the arraignment was provided but even presuming Studer was advised of the right to counsel and the nature of the charges there, this court has held that such advisements would be insufficient to support a finding of waiver of counsel for the purposes of trial. *Bradley-Lewis* at ¶ 30. "[W]aiver of counsel at an arraignment is effective for that proceeding only; before proceeding with a trial, the trial court must independently determine whether the defendant desires to waive counsel and whether, at that time, he has made a knowing, intelligent, and voluntary waiver" since "[t]he inquiry necessary to establish a constitutionally valid waiver for trial is, by its nature, more suited to the trial court, and not the arraignment proceeding." (Citation omitted.) *State v. Victor*, 11th Dist. Geauga Nos. 2014-G-3220 and 2014-G-3241, 2015-Ohio-5520, ¶ 33-34.

9

found it proper to vacate probation in addition to incarceration. *Garfield Hts. v. Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381, ¶ 18; *State v. Davis*, 2d Dist. Montgomery No. 23248, 2009-Ohio-4786, ¶ 41. In the present matter, the trial court ordered that the 179-day sentence was suspended "upon [the] condition" that Studer complete supervised probation for 12 months. Since the suspended sentence is vacated, a term of probation would serve no practical purpose. Thus, we modify Studer's sentence by vacating the 179-day suspended sentence and term of probation but affirm the conviction and fine. *Karnofel* at ¶ 20; *State v. Roepke*, 7th Dist. Mahoning No. 10 MA 138, 2011-Ohio-6369, ¶ 23.

{¶26} The first assignment of error is with merit.

{¶27} We will consider the second and third assignments of error jointly as they raise similar issues as to the weight and sufficiency of the evidence.

{¶28} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶29} In contrast, "weight of the evidence addresses the evidence's effect of

10

inducing belief" and warrants consideration of "whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶30} Pursuant to R.C. 2919.27, to convict Studer of Violating a Protection Order, the State was required to prove, beyond a reasonable doubt, that he did "recklessly violate the terms of * * * [a] protection order" issued under R.C. 3113.31. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶31} In his second assignment of error, Studer argues that there was insufficient evidence to sustain the conviction since the element of recklessness could not be proven where the prohibition relating to communication was subject to interpretation. He contends that the judgment entry in the custody proceedings does not clearly state that he can discuss only the parties' son on the Our Family Wizard app[2]: "There was no evidence to support the parties could only and exclusively communicate about their son on the app, it simply states that communication about their son should be done on the

---

2. While Studer and Turos use the Talking Parents app rather than the Our Family Wizard app as ordered by the court, we find this makes no practical difference in the application of the protection order to the communications made in these circumstances.

11

app."

{¶32}   As an initial matter, we note that the protection order itself does not mention communication between the parties regarding their child.  It contains a blanket statement prohibiting any communication with Turos through all means, including via e-mail, messaging, or social media.  It also contains a provision suspending companionship pending further order of the juvenile court.  It has been held that where a protection order leaves matters of visitation and custody to the juvenile court, the terms of the protection order should be read in conjunction with the juvenile court's order on that issue.  *See Cleveland v. Rogers*, 8th Dist. Cuyahoga No. 80430, 2002-Ohio-3547, ¶ 22.  As the State maintains, then, "the only permissible contact under the CPO was the August 8, 2018 court-order to 'communicate with each other regarding their son on Our Family Wizard.'"

{¶33}   As to Studer's general argument that the juvenile court order did not prohibit communications beyond the parties' son but only regulated that comments about their son must take place on the app, this argument is unavailing.  Even if the provision of the juvenile court order did not prohibit other communication, the order relating to the use of Our Family Wizard was put in place to aid in communications through a custody dispute, not to specifically regulate the parties' communication following the issuance of a protection order.  Communications falling outside of the bounds of the juvenile order would still be regulated under the terms of the protection order, which prohibits all contact.  It cannot be reasonably maintained that Studer, who does not dispute he was served with a copy of the protection order prohibiting communication, believed he was permitted to communicate with Turos regarding anything he chose simply because the juvenile court provision may have been unclear or allowed him some means of access for

12

communication through the app. To proceed in this manner falls squarely into the definition of recklessness. *See State v. Peric*, 11th Dist. Lake Nos. 2018-L-089 and 2018-L-090, 2019-Ohio-1164, ¶ 57 ("While [the provision of the protection order providing for communication regarding the children in the Our Family Wizard app] allows for facilitation of communication to address the children's needs, it is evident that this statement's intent is not to allow Peric to send messages threatening lawsuits and prison time based on a perceived underlying conflict over the children. This is an unreasonable interpretation of the order. Under this interpretation, Peric would have license to say anything to Joy provided he mentioned the children in the message.").

{¶34} Regardless, Studer generally argues that his comments were permissible as they related to custody of the child. While we do not take exception with the interpretation that custody could be construed as a permissible topic of communication about the child in some instances, we disagree with Studer's characterization of the comments he made to Turos. While some of his statements are clearly or arguably related to the child, this is not true for all of his statements. In particular, comments that Turos is "not making friends," has "more problems than just" Studer, and to "be good from now on, they are watching you" are clearly inappropriate and unrelated to discussing any matters relating to their child, visitation, or custody. It is unreasonable to characterize these statements, which include a statement that can be construed as a veiled threat, as permissible communication when a protection order is in place. There is no reasonable interpretation of the protection order, when read in conjunction with the juvenile court orders, that would allow such communication with Turos and, therefore, there was sufficient evidence to support a conviction for Violating a Protection Order.

13

{¶35} As to the manifest weight of the evidence, Studer raises several arguments that he contends weigh against a conviction. First, he emphasizes the lack of investigation into this matter and notes that Deputy Burris' testimony did not present evidence to help aid the trier of fact in determining whether the protection order was violated. We emphasize that "[t]he police are not required to collect all possible evidence for a conviction to be supported by the evidence and 'we will not speculate on what further police investigation may or may not have discovered' when there is sufficient, credible evidence." (Citation omitted.) *Peric* at ¶ 55, citing *State v. Griggs*, 11th Dist. Lake No. 2014-L-127, 2015-Ohio-4635, ¶ 58. This matter primarily turns on the communication made and whether it violated the terms of the protection order. Burris' testimony demonstrated the circumstances surrounding the bringing of the charges but beyond that, nothing additional was necessary for the trier of fact to find the weight of the evidence supported a conviction given Turos' testimony and the record of the communication made by Studer.

{¶36} Studer also makes various arguments that the evidence showed he did not act recklessly. As addressed above, there was evidence in the record to the contrary and we find no miscarriage of justice in such a finding when weighed in light of all of the evidence presented. Studer emphasizes that he was not reckless when making statements about how he would prevail in the custody case and that he would be a great attorney because he believed these statements to be true. Whether or not Studer believed them to be true is irrelevant; the issue is whether the terms of the protection order permitted these communications to Turos. While he also takes issue with Turos' testimony that she felt threatened or upset by these statements, believing she should not

14

have felt threatened, again, the question is not how the comments made the protected person feel but whether he recklessly made such comments in violation of the order.

{¶37} Studer argues that his interpretation of the protection order, that he could communicate regarding parenting issues back and forth on the app, was buttressed by his statements that he could use the app either in response to Turos or to initiate conversations to discuss parenting. As noted above, regardless of how much latitude Studer should be given in discussing issues relating to parenting and visitation on the app, he made statements that went beyond the bounds of such communication which there was no justifiable reason to believe were permissible.

{¶38} Finally, Studer contends that the trial court judge could not have found him guilty when she was unaware of the terms of the protection order, pointing to the following statement, made at the sentencing hearing: "I don't know what your CPO says." The exchange referenced at the sentencing hearing took place when the court ordered that Studer abide by the terms of the protection order and Studer inquired about how to attend events with his child. The court said "You have to address that through the CPO. This court doesn't have jurisdiction over the CPO. * * * I don't know what your CPO says." The fact that the judge had not memorized the terms of the order and was unfamiliar with them over a month after the trial at a sentencing hearing does not render the decision against the weight of the evidence. Statements made after the verdict do not demonstrate what the court knew at the time it rendered its decision.

{¶39} The second and third assignments of error are without merit.

{¶40} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is modified and affirmed as modified. Costs to be taxed against

15

the parties equally.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

16

Case No. 2020-P-0076