[Cite as *State v. Bradley-Lewis*, 2020-Ohio-3563.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS.  2019-A-0086** <br> **2019-A-0087** <br> **2019-A-0088** |
| ORLANDO LAMAAR BRADLEY-LEWIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Ashtabula Municipal Court, Case Nos. 2014 CRB 00006, 2014 TRD 00004 and 2014 TRC 00031.

Judgment: Affirmed in part and modified and affirmed as modified in part.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}   Defendant-appellant, Orlando Lamaar Bradley-Lewis, appeals his convictions for Obstructing Official Business, Resisting Arrest, Failure to Reinstate a Driver's License, and Reckless Operation in the Ashtabula Municipal Court.  For the following reasons, the judgment of the trial court is affirmed in part and modified and affirmed as modified in part.

{¶2}   On January 1, 2014, in Ashtabula Municipal Court Case No. 14TRD00004, Bradley was issued a ticket charging him with Failure to Reinstate, an unclassified

misdemeanor, in violation of R.C. 4510.21(A), and Reckless Operation, a minor misdemeanor, in violation of R.C. 4511.20. On the same date, he was issued a ticket for Operating a Vehicle Under the Influence, a misdemeanor of the first degree, in violation of R.C 4511.19, in Case No. 14TRC00031. On January 2, 2014, in Case No. 14CRB00006, Complaints were filed charging Bradley with the following: two counts of Assault, misdemeanors of the first degree, in violation of R.C. 2903.13(A); Aggravated Menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21(A); Obstructing Official Business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A); and Resisting Arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A). All offenses arose from an incident occurring on January 1, 2014, and the matters were handled in a consolidated fashion in the trial court.

{¶3} On January 29, 2014, counsel for Bradley, Sam Thomas, filed a notice of appearance. On February 25, 2014, counsel failed to appear at a pretrial and Bradley expressed a desire to obtain different counsel. On May 21, 2014, Thomas filed a motion to withdraw, asserting that Bradley had failed to make payments and stay in contact.

{¶4} On November 21, 2014, the court issued a Judgment Entry putting out a warrant for Bradley's arrest for failure to appear at a pretrial. Bradley was arrested in July 2016.

{¶5} According to the court's docket, on July 21, 2016, attorney Thomas Brown filed a notice of appearance. He withdrew on July 29 and on December 22, 2016, Bradley appeared with attorney Kevin Cafferkey at pretrial hearings.

{¶6} On March 27, 2017, attorney Leo Talikka entered an appearance in all three cases and proceeded to request discovery and file additional motions and continuances.

2

For reasons not present in the record, attorney Talikka moved to withdraw as counsel in November 2017. At a November 3, 2017 pretrial hearing, the court informed Bradley that the motion to withdraw had been granted. The court inquired whether he would be hiring counsel, to which Bradley responded affirmatively and indicated he should obtain counsel "next week." The court informed Bradley he "need[ed] to be ready to proceed and go forward when [the next hearing] is set." Bradley stated that he could not "control his attorney dropping out of a case that I already paid him for." The court responded, "we can't control how you threatened your attorney as well," which allegation Bradley denied. Bradley appeared at a November 29, 2017 pretrial hearing and the court's entry indicated the matter was set for trial and Bradley was "to have new atty. by then."

{¶7} On December 13, 2017, Bradley filed a pro se motion for recusal, to dismiss the complaint, and a demand for discovery. On the same date, the court issued a Judgment Entry, resetting the matter for a jury trial and informing Bradley that he "has the right to represent himself or hire another attorney to represent him in these cases." The entry informed him that he could apply for appointed counsel if he could not afford counsel and stated that no further continuances would be granted if he was unable to obtain counsel or lacked diligence in securing an attorney. It denied the motion to recuse.

{¶8} Bradley filed a pro se notice of appeal and proceedings were stayed pending appeal. His appeal was dismissed due to the lack of a final appealable order. *State v. Bradley-Lewis*, 11th Dist. Ashtabula No. 2018-A-0006, et al., 2018-Ohio-1445.

{¶9} Bradley subsequently filed various motions pro se, including motions to dismiss and for joinder, and a request for discovery.

{¶10} A pretrial hearing was held on September 4, 2018, with the court finding

3

that "offers were made and defendant will consider after consulting with his attorney." The court's judgment noted that trial would go forward on September 28, regardless of his representation status.

{¶11} Attorney David Per Due filed a notice of appearance on September 20, 2018, requested discovery and a bill of particulars, and the matter was continued several times.

{¶12} On September 10, 2019, the State moved to dismiss the Assault and Aggravated Menacing charges, which motion was granted.

{¶13} On November 18, 2019, Per Due filed a Motion to Withdraw as Counsel on the grounds that, when discussing a plea offer with Bradley, he "became belligerent" and fired him. A pretrial hearing was held on November 21, 2019. Bradley stated that he wanted to fire his attorney because he had not talked to him since the last time he was in court, knew "nothing about the case" and did not build a defense. The court stated that it was "sure [attorney Per Due] knows enough about this case to proceed to jury trial tomorrow. So here's your choices. You're going to proceed pro se with the jury trial tomorrow. Is that what you're going to do?" Bradley responded, "Yeah. It's the same result regardless. You're going to do what you want to do anyway. I objected to everything that you've done." The court inquired if Per Due was asking to withdraw and he responded affirmatively, indicating there was a disagreement between himself and Bradley and he believed he must withdraw. The court granted his request. The following exchange then occurred:

The court: Mr. Bradley, you intend to proceed on your own pro se tomorrow --

Bradley: Yeah.

4

The court: -- and represent yourself

Bradley: I'm just going to show up.

{¶14} After the State explained its final plea offer, Bradley discussed the merits of his case and stated: "This is the defense I'm trying to put together with my attorney that I can't get ahold of or talk to. When I ask him questions about the case, he just yells at me. So I'd rather just go and hear it and let you railroad me by myself." Following the pretrial, the court issued a judgment entry stating that the motion to withdraw was granted and Bradley "is proceeding pro se."

{¶15} A jury trial was held on November 22, 2019, at which the following pertinent testimony was presented:

{¶16} James Hildebrand, an Ashtabula Police Department patrolman, testified that on January 1, 2014, at around 1:30 a.m., he was dispatched to a reported fight. He was subsequently informed that one of the participants in the fight had left the scene and followed tire tracks in the snow near the area to which he had been dispatched, eastbound on West 40th Street in Ashtabula. He noted the tire tracks were back and forth on the road, indicating swerving. Upon following these tracks, he encountered a truck meeting the dispatch description parked beside a vacant home. He approached the truck and spoke with three females inside, and one indicated Bradley had been the driver. He observed footprints in the snow leading away from the driver's door.

{¶17} Lieutenant Rodney Blaney of the Ashtabula Police Department responded to the scene where Hildebrand had discovered the suspect's truck. He followed footprints in the snow leading from the open driver's door of the truck and discovered a boot which was later found to be a match to a boot Bradley was wearing when arrested. Blaney

5

followed the tracks until he saw Bradley standing in the road. Bradley ran from Blaney and tried to enter a residence (later determined to be the home of Bradley's grandmother) by forcing the back door open. Bradley failed to comply with orders to get on the ground and a taser was used. He was secured and taken into custody.

{¶18} Lieutenant Daniel Gillespie of the Ashtabula Police Department testified that after he arrived at the house to assist Blaney, Bradley failed to comply with commands and he used his taser and placed Bradley under arrest. Due to the smell of alcohol on his breath, Gillespie conducted sobriety tests and determined Bradley was impaired, but no breath test was given.

{¶19} During the trial, Bradley did not conduct cross-examination or present witnesses. He asserted that he could not perform cross-examination since he was not an attorney and objected several times to the trial being held due to his lack of counsel.

{¶20} The jury found Bradley guilty of Obstructing Official Business and Resisting Arrest and not guilty of OVI. The court sentenced Bradley to serve terms of 90 days in jail, with 45 days suspended, for each offense, to run consecutively, and fines of $150. The 45-day sentences were suspended on the condition that Bradley commit no similar offenses within two years. The court found Bradley guilty of Failure to Reinstate and Reckless Operation and he was fined $250 and $40, respectively, and ordered to pay costs.

{¶21} Bradley timely appeals and raises the following assignments of error:

{¶22} "[1.] The trial court erred when it conducted a jury trial without securing a waiver of counsel from appellant.

{¶23} "[2.] The trial court erred when it admitted a non-certified copy of appellant's

6

LEADS into evidence as proof he was driving under suspension.

{¶24} "[3.] The verdict of guilty of reckless operation is against the sufficient and manifest weight of the evidence."

{¶25} In his first assignment of error, Bradley argues that the court erred by ordering the trial to go forward when he was unrepresented by counsel and had not waived his right to counsel.

{¶26} "Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, a criminal defendant has the right to assistance of counsel for his defense." (Citation omitted.) *State v. Moore*, 11th Dist. Trumbull No. 2015-T-0072, 2017-Ohio-7024, ¶ 15. "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *State v. Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915 (1974), paragraph one of the syllabus. "[C]ourts must 'indulge in every reasonable presumption against waiver' of the right to counsel." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 29, citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). "[T]he state bears the burden of overcoming the presumption against a valid waiver." *State v. Karnofel*, 11th Dist. Trumbull No. 2015-T-0070, 2017-Ohio-428, ¶ 11.

{¶27} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Ross*, 2017-Ohio-709, 86 N.E.3d 44, ¶ 21 (11th Dist.), citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. A waiver cannot be presumed from a silent record; "[t]he record must

7

show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer." (Citation omitted.) *Wellman* at paragraph two of the syllabus.

{¶28} Here, Bradley raises legitimate concerns about the manner in which he "waived" his right to counsel. The court did not explicitly ask Bradley if he was waiving his right or discuss the impact of waiving such right. It informed him prior to the final pretrial that failure to secure counsel could result in him being required to proceed without counsel and, at the final pretrial hearing the day before trial, stated he had "two options" but then asked only if he was going to proceed pro se, to which he responded: "Yeah. It's the same result regardless. You're going to do what you want to do anyway. I objected to everything that you've done." He further stated that he would rather go to trial by himself and be "railroaded" than maintain current counsel. Throughout the course of the trial he objected to being required to represent himself. From his interactions with the court, this was not a scenario where he requested to proceed pro se but one where he appeared to accept that this was the only choice available. Even if his acquiescence to the court's requirement that he proceed pro se constituted waiver, such waiver cannot be found to have been intelligently given.

{¶29} As to advisements made to Bradley regarding his right to counsel, we do not find that references to this right were sufficient to constitute a "meaningful dialogue as to the inherent risks of proceeding pro se." The transcripts of two pretrial hearings in which discussions were had with Bradley did not advise of the charges, penalties, or consequences of proceeding pro se but only communicated to Bradley that the court would not continue to delay proceedings and that he needed to obtain counsel. The

8

December 13, 2017 judgment entry ruling on various motions and informing Bradley that his failure to obtain counsel may result in further continuances being denied does state Bradley has the right to counsel but this entry does not constitute a dialogue nor does it go beyond a general statement that Bradley had the right to counsel. It is necessary that a defendant be advised of, in addition to the offenses, punishments, and defenses, the inherent dangers in proceeding pro se. *Karnofel*, 2017-Ohio-428, at ¶ 19 ("[t]here was no inquiry directed to Karnofel to ascertain if she understood the seriousness of the trial and the potential consequences to her liberty"); *State v. McCrory*, 11th Dist. Portage No. 2006-P-0017, 2006-Ohio-6348, ¶ 25 (a meaningful dialogue must include discussion of the offenses, possible punishments, defenses, and "any other facts which are essential for a total understanding of the situation") (citation omitted). The record does not demonstrate a full or meaningful dialogue or explanation of potential outcomes or defenses or the inherent dangers in proceeding pro se.

{¶30} While no transcript of an arraignment is in the record, we note that the record contains several preprinted judgment entries used to make notations on arraignment, counsel, bond, plea, decision, and sentence, which have a checkmark next to "Arraignment" and the following preprinted statement: "Acknowledged receipt of a copy of the complaint, has been informed of the nature of the charge and the maximum penalty, the right to counsel, the right to a continuance and the other rights under Criminal Rule 5." This court has held that "waiver of counsel at an arraignment is effective for that proceeding only; before proceeding with a trial, the trial court must independently determine whether the defendant desires to waive counsel and whether, at that time, he has made a knowing, intelligent, and voluntary waiver." (Citation omitted.) *State v. Victor*,

9

11th Dist. Geauga Nos. 2014-G-3220 and 2014-G-3241, 2015-Ohio-5520, ¶ 33. "The inquiry necessary to establish a constitutionally valid waiver for trial is, by its nature, more suited to the trial court, and not the arraignment proceeding" since the "nature of arraignment proceedings does not lend itself to the judge or magistrate conducting an inquiry sufficient to pass constitutional muster." (Citation omitted.) *Id.* at ¶ 34. Thus, these are insufficient to demonstrate proper waiver as well.

{¶31} The State argues that waiver is demonstrated by the fact that Bradley appeared at a status hearing pro se, made pro se filings, and had knowledge of the legal system, emphasizing that he caused delays through firing counsel on several occasions. It has been held that "in certain situations, the court may be permitted to infer a waiver of the right to counsel after considering the 'total circumstances of the individual case including the background, experience, and conduct of the accused person.'" *State v. Herron*, 11th Dist. Lake Nos. 2009-L-119, et al., 2010-Ohio-2050, ¶ 20, citing *State v. Gabel*, 11th Dist. Ashtabula No. 2008-A-0076, 2009-Ohio-3792, ¶ 42.

{¶32} It is accurate that Bradley has experience with the court system, has represented himself in other actions, and filed some pleadings pro se in this matter. It does appear that he contributed to the delay in this case by hiring and firing or failing to communicate with several attorneys. However, even presuming his actions should be construed as implied waiver, this court has found that a valid waiver "cannot be inferred" when the court has not "engaged in any meaningful dialogue as to the inherent risks of proceeding pro se." *Gabel* at ¶ 41. This court further explained that while "a few cases have acknowledged that a defendant can impliedly waive the right to counsel" by their actions in certain instances, "a defendant's conduct can never constitute waiver in the

10

absence of the trial court fully advising on the record of that right." *Karnofel*, 2017-Ohio-428, at ¶ 14-15 ("[I]n order to find an implied waiver of the right to counsel, a court must examine not only the defendant's actions, but also whether the trial court fully advised the defendant 'on the record of the inherent dangers in proceeding pro se' * * *. * * * *[W]hen a trial court fails in these respects, waiver cannot be inferred.*'"); *State v. Koons*, 7th Dist. Columbiana No. 06-CO-67, 2007-Ohio-4985, ¶ 46.

{¶33} For the foregoing reasons, we find there was not proper waiver of Bradley's right to counsel. The proper remedy "[w]here a defendant has been convicted of a petty offense without the benefit of counsel and without executing a valid waiver of counsel" is that "any sentence of confinement must be vacated although the conviction itself is affirmed." *Gabel* at ¶ 43, citing *McCrory*, 2006-Ohio-6348, at ¶ 29. Thus, Bradley's 45-day suspended sentences for Resisting Arrest and Obstructing Official Business are vacated.

{¶34} Bradley argues that his convictions should be vacated and the matter remanded for a new trial rather than vacating his sentence because he has already served his jail term and the foregoing only applies where a defendant has not actually been imprisoned. He cites no authority for the proposition that it is proper to have a retrial in these circumstances.

{¶35} We note that in discussing the correct remedy for denial of the right to counsel in this situation, it has been held that "the right to appointed counsel under the Sixth and Fourteenth Amendments in state criminal proceedings is limited to cases that lead to actual imprisonment." *State v. Boughner*, 11th Dist. Geauga No. 98-G-2161, 1999 WL 1297606, *10 (Dec. 17, 1999). However, we do not find that this means a defendant

11

who has been sentenced to a term of incarceration for a misdemeanor and serves said term is entitled to a new trial. This principle has been applied in cases where a term of incarceration was actually imposed, in contrast to those where incarceration was a potential punishment but was not imposed by the court.

{¶36} Courts have emphasized that the failure to obtain waiver of counsel in a petty offense "prevents the trial court from imposing a sentence on the defendant" but "does not vacate the entire conviction" and that the conviction and fine must be affirmed. *Lyndhurst v. Lasker-Hall*, 8th Dist. Cuyahoga No. 102806, 2016-Ohio-108, ¶ 14; *Boughner* at *10; *State v. Delong*, 2d Dist. Greene No. 2000 CA 102, 2001 WL 470054, *5 (May 4, 2001) (where a defendant was found guilty of a petty offense without valid waiver of counsel "there is nothing fatally defective with the judgment in general, but only with the sentence of confinement component of that judgment"). Further, although there is limited precedent on the precise issue raised here, in a case that led to "actual imprisonment," the appellate court still vacated only the sentence although the defendant had already served a portion of his incarceration prior to the grant of a stay. *State v. Donahoe*, 2d Dist. Greene No. 90 CA 55, 1991 WL 38899, *1-2 (Mar. 21, 1991).

{¶37} Moreover, Bradley served his 45-day jail terms as his stay was denied in the trial court and he did not seek a stay in this court. In many instances, where a defendant serves his jail time in a misdemeanor, the matter is rendered moot, which means that even if there was an error, no remedy would be available. *See State v. Troyer*, 11th Dist. Trumbull No. 2019-T-0036, 2019-Ohio-4929, ¶ 25 (where defendant "fully served the jail sentence imposed," the court noted that "even if we found [defendant's] assignment of error to have merit, there is no ongoing or future penalty from which this

court can grant relief"). We note that in the present matter, the appeal is not moot since Bradley has two 45-day suspended sentences for which he could still be incarcerated. *State v. Singleton*, 11th Dist. Portage No. 2019-P-0013, 2019-Ohio-4518, ¶ 7. The fact that Bradley has served the ordered jail term does not warrant reversing his conviction, which would be contrary to the authority discussed above.

{¶38} The first assignment of error is with merit.

{¶39} In his second assignment of error, Bradley argues that the trial court erred when it allowed a non-certified Law Enforcement Automated Data System (LEADS) report to be admitted since the statute allowing admission conflicts with Ohio Evid.R. 803 and 902 and is unconstitutional.

{¶40} As an initial matter, both the State in the trial court when requesting admission and Bradley here discuss the admission of LEADS records pursuant to R.C. 4510.11, the statute dealing with the offense of Driving Under Suspension. The offense for which Bradley was charged and convicted was a violation of R.C. 4510.21, Failure to Reinstate a License. Nonetheless, both offenses contain a substantially similar provision regarding the admission of the LEADS report. Pursuant to R.C. 4510.21(B):

> Upon the request or motion of the prosecuting authority, a noncertified copy of the law enforcement automated data system report or a noncertified copy of a record of the registrar of motor vehicles that shows the name, date of birth, and social security number of a person charged with a violation of division (A) of this section may be admitted into evidence as prima-facie evidence that the license of the person had not been reinstated by the person at the time of the alleged violation of division (A) of this section. The person charged with a violation of division (A) of this section may offer evidence to rebut this prima-facie evidence.

{¶41} The State initially argues that this issue was waived since it was not raised below. "Failure to raise at the trial court level the issue of the constitutionality of a statute

or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, such doctrine is discretionary and a court may address the merits of the argument in cases of "plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus; *State v. Boczar*, 11th Dist. Ashtabula No. 2004-A-0063, 2005-Ohio-6910, ¶ 30. Given the circumstances in the present matter outlined above, we will address the merits of this assignment of error.

{¶42} While the State contends that the legislature resolved the issue of admissibility of noncertified LEADS reports when it amended the law to include the foregoing provision, this does not address the issue raised by Bradley: whether such a statute is unconstitutional as in conflict with the Ohio Rules of Evidence.

{¶43} Pursuant to Article IV, Section 5(B) of the Ohio Constitution, "[t]he supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Thus, the Ohio Rules of Evidence "control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State v. O'Neill*, 11th Dist. Portage No. 2012-P-0116, 2013-Ohio-2619, ¶ 16, citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *Boczar* at ¶ 38.

14

{¶44} Bradley argues there is a conflict between the statutory language outlined above and Ohio Evid.R. 803 and 902. Evid.R. 803 provides exceptions to the rule against hearsay, including public records and reports, i.e., "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Evid.R. 803(8). It does not speak to whether such records must be certified. There is no conflict as to Evid.R. 803 specifically because it allows the admission of a LEADS report as a public record. *See Cleveland v. Craig*, 8th Dist. Cuyahoga No. 99619, 2013-Ohio-5742, ¶ 37 ("a LEADS printout is admissible as a public record under Evid.R. 803(8)(a)").

{¶45} Evid.R. 902 lists and describes documents which can be admitted without "extrinsic evidence of authenticity," including certified copies of public records. Since R.C. 4510.21 provides for admission of noncertified public records, Bradley argues this statute conflicts with Evid.R. 902. However, Evid.R. 902(10) specifically provides that extrinsic evidence as a condition precedent to authenticity is not required with respect to "[a]ny signature, document, or other matter declared by any law of a jurisdiction, state or federal, to be presumptively or prima facie genuine or authentic." The Staff Notes state that "Rule 902(10) is a catch-all reminder that the examples of self-authentication set forth in Rule 902 are not the only examples of self-authentication" and note that other examples of self-authentication could be found in the Revised Code. The legislature's creation of a statute that allows for admission of a non-certified LEADS report as prima facie evidence of failure to reinstate a license is not contradictory to Evid.R. 902 or an attempt to modify the rule but, instead, is permissible under its language. Since we do not find that the statute

conflicts with the Rules of Evidence, the statute is not unconstitutional and admission of the evidence was proper.

{¶46} The second assignment of error is without merit.

{¶47} In his third assignment of error, Bradley argues that the conviction for Reckless Operation was against the weight and sufficiency of the evidence since the State failed to prove that he was operating a motor vehicle in "willful or wanton disregard for the safety of persons or property."

{¶48} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶49} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive - - the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts

16

in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶50} Pursuant to R.C. 4511.20(A), to convict Bradley of Reckless Operation, the State was required to prove beyond a reasonable doubt that he did "operate a vehicle * * * on any street or highway in willful or wanton disregard of the safety of persons or property." "[W]hen the operator of a vehicle, with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton." *State v. Earlenbaugh*, 18 Ohio St.3d 19, 22, 479 N.E.2d 846 (1985).

{¶51} Here, the testimony of the officers demonstrated that Bradley had operated the vehicle in question, which matched the description of the one leaving the scene of the reported assault. When the vehicle was located, the driver's door was open, footprints were present in the snow leading away from the driver's door, and the boot located in the footprints matched the one boot worn by Bradley when he was arrested. Bradley does not specifically dispute that he had driven the truck, but, rather, argues there was no evidence he had driven recklessly.

{¶52} Hildebrand testified that he had pursued the truck from the scene of the assault and ultimately followed tire tracks in the snow to the location of that truck, the one driven by Bradley. Although he did not observe Bradley's driving, he saw that the tracks went back and forth from the north and south side of the road "swerving down the roadway" and that this pattern of moving from one side of the road to another continued down the road. Testimony also indicated that Bradley showed signs of impairment due

17

to alcohol following his arrest, admitted to drinking, and smelled of alcohol.

{¶53} Considering these circumstances, we find the weight and sufficiency of the evidence support a conviction for Reckless Operation. In determining whether a conviction for Reckless Operation is supported by the evidence, courts have considered a variety of circumstances, including whether the defendant has driven between traffic lines, traveled in a manner unsafe for the current road conditions, and or was under the influence of alcohol. *Cleveland v. Davis*, 8th Dist. Cuyahoga No. 107138, 2019-Ohio-543, ¶ 21 ("driving between traffic lanes * * * could constitute a willful or wanton disregard for the safety of persons"); *State v. Vanoss*, 11th Dist. Trumbull No. 2009-T-0047, 2010-Ohio-1453, ¶ 13 (traveling at the posted speed limit can be reckless operation when it is unsafe given the road conditions, including dark, slippery, ice and snow covered roads); *State v. Tamburin*, 145 Ohio App.3d 774, 780-781, 764 N.E.2d 503 (9th Dist.2001) (the court can consider a defendant's intoxication in conjunction with other factors, such as failure to stay in marked lanes when determining recklessness). Given that the facts demonstrate Bradley was driving in snowy conditions back and forth across both sides of the road while impaired by alcohol, we find the evidence supports a conviction for Reckless Operation.

{¶54} The third assignment of error is without merit.

{¶55} For the foregoing reasons, Bradley's convictions in the Ashtabula Municipal Court are affirmed in part and modified and affirmed as modified in part. Costs to be taxed against the parties equally.

TIMOTHY P. CANNON, P.J.,
MARY JANE TRAPP, J.,
concur.