# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

GREG P. GIVENS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0044

---

Criminal Appeal from the
Belmont County Court, Eastern Division, of Belmont County, Ohio
Case Nos. 23CRB00012-01, 02, 03

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Convictions Affirmed.
Sentence Vacated.
Reversed and Remanded in part.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Robert T. McDowall, Jr.*, for Defendant-Appellant

Dated: April 15, 2025

WAITE, J.

{¶1} Appellant Greg P. Givens appeals an August 8, 2024 judgment entry of the Belmont County Court, Eastern Division, in Belmont County, Ohio, which convicted him of several misdemeanor offenses stemming from a property dispute. Appellant argues that the trial court failed to provide the requisite advisements and warnings prior to allowing him to defend himself *pro se*, particularly after multiple competency evaluations were ordered during the course of these proceedings. Because the court failed to engage in a colloquy with Appellant to provide the requisite advisements and warnings before allowing him to represent himself, his arguments have merit. The trial court's error on this issue, however, does not result in reversal of his convictions, but does impact sentencing in this case. While Appellant's convictions are affirmed, the matter is reversed and remanded. Appellant's sentence is vacated and the case is remanded for resentencing without the possibility of the court sentencing to any period of confinement or a suspended sentence as options.

### Factual and Procedural History

{¶2} This appeal stems from a longstanding legal dispute that has taken place primarily on the civil court docket. The criminal matters involved included ordinance violations for failure to remove weeds (15CRB00477), failure to remove weeds and prohibited uses in a residence district (18CRB00381E), and criminal trespassing (21CRB00247E). Case number 15CRB00477 was dismissed. In case number 18CRB00381E, Appellant was convicted of the weeds violation but the prohibited uses

charge was dismissed. This conviction was affirmed on appeal. Case number 21CRB00247E was dismissed for failure to try the case within the time parameters of the speedy trial limits, following a successful appeal in this Court.

{¶3} Although the civil disputes are not directly at issue in this case, they provide some context as to the nature of the present offense and Appellant's behavior. Briefly, after the death of Appellant's grandfather, he apparently was to inherit a piece of property through his grandfather's will. Appellant failed to follow probate court rules when attempting to open an estate for his grandfather and the case was dismissed by the probate court. In June of 2021, the county treasurer filed a complaint naming Appellant's deceased grandfather and grandmother alleging non-payment of property taxes, penalties, and assessments for the previous five years. After a series of lawsuits, John Longwell (the victim in this case) purchased the property through a sheriff's sale.

{¶4} While the issue of ownership of the property has long been resolved, Appellant still claims he owns this property by virtue of his grandfather's will, and continued to enter the property as though it was his. The offense at issue occurred after Appellant was captured on surveillance camera entering the property and allegedly removing a surveillance camera installed by the actual owners. As a result, Appellant was charged with the following criminal offenses: theft, a misdemeanor of the first degree in violation of R.C. 2913.02(A)(1), (B)(2); criminal mischief, a misdemeanor of the third degree in violation of R.C. 2909.07(A)(1)(a), (C)(2); and criminal trespass, a misdemeanor of the fourth degree in violation of R.C. 2911.21(A)(1), (D)(1).

{¶5} On March 7, 2023, the state filed a suggestion of incompetency after learning that Appellant had been found incompetent to stand trial during a case originating

in West Virginia. To the state's best knowledge, Appellant was confined in a mental health institution in an attempt to restore his competency. However, competency was not timely restored and the charges were dismissed. No further information concerning this case or the issue of competency in West Virginia are in this record. As a result of the state's information, the Belmont County Court ordered a competency evaluation which, due to back logs, took nine months to be scheduled. This competency evaluation was inconclusive, and the evaluator was concerned enough about its findings to refer the issue to a psychiatrist for another evaluation. The second evaluator also had some reservations, but ultimately found Appellant competent to stand trial after conducting an evaluation via Zoom.

{¶6} Prior to evaluation, Appellant's appointed counsel sought to withdraw due to various communication issues she experienced with Appellant. The court deferred ruling on her request until after the competency evaluation was completed. Once this was completed, the court allowed counsel to withdraw and inquired as to whether Appellant would accept appointment of an attorney he previously told the court that he did not wish to work with after a bad experience in his speedy trial case. The record reflects that the trial court was well-aware of Appellant's earlier legal issues and his communication struggles with several previous lawyers. At arraignment, the court had acknowledged it knew Appellant did not want to be represented by this previous attorney, said appointment of this attorney would also not be the court's first choice, and agreed this attorney would not be appointed for Appellant. However, once appointed counsel requested withdrawal, the court stated its intention to appoint the attorney earlier rejected. When Appellant objected, the court inquired "[w]ell, but you do want appointed counsel?"

Appellant responded to this question that he would prefer to represent himself.  The court permitted counsel to withdraw with no further discussion on the matter.  At a later hearing, Appellant sought and was provided "advisory counsel" due to the complexity of the issues in this case.

{¶7}    Following a jury trial in which Appellant acted *pro se,* the jury found Appellant guilty on all counts as charged.  The court decided to seek a third competency evaluation prior to sentencing on "an emergency basis," to be conducted at the jail.  (Trial Tr., p. 300.)  There is nothing in this record to reveal what prompted this "emergency" evaluation.

{¶8}    At the sentencing hearing, the court imposed a 180-day jail sentence with three years of probation for theft, 60 days for trespass, and 30 days for mischief, the maximum possible sentence on each count.  At no time during the hearing did the court state these sentences were to be consecutive.  Appellant was ordered to serve his sentence for the theft conviction, but the court stayed the remainder of his sentence.  The court also ordered restitution, asking Appellant if he disputed the restitution amount. When Appellant responded that he did not, the court ordered restitution in the amount of $168.96.  The court once again ordered a competency evaluation of Appellant.  It is unclear, however, if this was the fourth such evaluation, or whether the "emergency" evaluation that was to be conducted prior to sentencing was still pending.

{¶9}    The court's sentencing entry differs from his oral pronouncement following the sentencing hearing.  For the first time, the court stated that the sentences were to run consecutively.  The court credited Appellant for nine days served, leaving 171 days remaining.  The court also ordered Appellant to pay court costs in the amount of $105,

jury fees in the amount of $960, and restitution in the amount of $168.96. Despite the fact that Appellant's indigency is a matter of record, the court ultimately ordered that Appellant pay a total of $1,233.96.

**{¶10}** We note that on appeal Appellant was appointed counsel, but filed some motions *pro se* early in the appellate process. While the vast majority of Appellant's *pro se* filings were rejected by this Court as hybrid representation, his *pro se* motion for leave to proceed as a vexatious litigator was granted, as counsel did not file this request on his behalf and it is mandatory, due to his status as a vexatious litigator.

ASSIGNMENT OF ERROR

The trial court committed reversible error by failing to obtain a knowing, voluntary and intelligently made waiver of Appellant's right to counsel on the record and in conformity with the constitutions of the United States and Ohio and in the manner required by Ohio Crim. Rules 44 and 22.

**{¶11}** Appellant contends that the trial court failed to obtain a knowing, intelligent, and voluntary waiver of his right to counsel in open court. Appellant's argument centers on the fact that the court failed to engage in any colloquy with him concerning the dangers of self-representation or discuss the nature of the charges, burden of proof, right against self-incrimination, and the possible sentences that could be imposed if he were to be found guilty.

**{¶12}** The general requirements regarding waiver of counsel are found within Crim.R. 44. As the offenses in this case are petty offenses, the pertinent law is found in subsection B:

(B) Counsel in Petty Offenses.  Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant.  When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon the defendant, unless after being fully advised by the court, the defendant knowingly, intelligently, and voluntarily waives assignment of counsel.

(C) Waiver of Counsel.  Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22.  In addition, in serious offense cases the waiver shall be in writing.

**{¶13}** "[T]rial courts may constitutionally deny a defendant his right to self-representation when there are lingering doubts concerning the defendant's competency to represent himself."  *Id.*, citing *State v. Godley*, 2018-Ohio-4253, ¶ 15 (3d Dist.).  "[B]efore permitting self-representation, the trial court must ensure that a defendant is 'aware of the dangers and disadvantages of self-representation' so that ' " 'he knows what he is doing and his choice is made with eyes open.' " ' "  *State v. Fulcher*, 2024-Ohio-1609, ¶ 35 (2d Dist.), citing *State v. McAlpin*, 2022-Ohio-1567, ¶ 4; *Faretta v. California*, 422 U.S. 806, 835 (1975).  (Other citation omitted.)

**{¶14}** The Supreme Court of Ohio has applied a test earlier set forth in *Von Moltke v. Gillies*, 332 U.S. 708 (1948) to determine whether a trial court engaged in an adequate inquiry with respect to a waiver of counsel.  *State v. Gibson*, 45 Ohio St.2d 366, 377 (1976).  In *Von Moltke*, the Court stated:

The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid, such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

. . .

*Id.* at 724.

{¶15} Before the issue of self-representation arose in the matter now before us, the court grappled with concerns relative to Appellant's competency, which lingered throughout the case. The issue of Appellant's representation first arose during his arraignment. Again, we note that Appellant has been declared a vexatious litigator, and the court was clearly familiar with Appellant's background in this regard.

{¶16} At his arraignment, held on February 21, 2023, the following discussion occurred:

THE COURT: Okay. I will appoint the public defender to represent you. I know that there were conflicts before but we have a different public defender now.

[APPELLANT]: Your Honor, there was I think six or seven attorneys appointed to me. They all bowed out due to conflict of interest. Mr. Brandon Lippert -- I have basically [have] severe communication problems with him.

THE COURT: Brandon Lippert would not be my first choice because we kind of go down a list but my first choice is the public defender and it's not the same person that was here before when you had your previous case. So I'm going to appoint the public defender's office. . . .

(2/21/23 Arraignment, p. 5.)

{¶17} The court appointed Attorney Aaron Miller to represent Appellant and they appeared to have a good attorney-client relationship. An issue as to Appellant's competency arose, not through Appellant's counsel, but when the state filed a suggestion of incompetency on March 7, 2023. Two days later, a hearing was held on the issue. Again, the suggestion of incompetency stems from the decision of a West Virginia court to dismiss unspecified charges against Appellant after finding him incompetent to stand trial and after an unsuccessful attempt to restore his competency in a mental health institution. At the Belmont County competency hearing, the court indicated the wait time before Appellant's evaluation would be scheduled was likely to be lengthy. Regardless, Attorney Miller continued to represent Appellant at several hearings until approximately May 25, 2023.

{¶18} Although it is not explicit from the record, it appears that Attorney Miller may have withdrawn due to a conflict within his office. Thereafter, Attorney Lane Hanlon represented Appellant for a short time until she filed a motion to withdraw from representation. The court delayed ruling on her motion until Appellant's competency evaluation process was completed. When the issue of Attorney Hanlon's continued representation was finally addressed on December 21, 2024, Appellant told the court that he would not stand in her way if she wished to withdraw. From the record, it appears that

Appellant was somewhat hesitant in reaching this decision. The court then inquired whether Appellant could work with Attorney Lippert, despite the fact that Appellant had earlier informed the court he did not want Attorney Lippert appointed in this case due his belief that Attorney Lippert had poorly represented him in an earlier case. The court had earlier acknowledged he was aware of Appellant's antipathy towards this lawyer. Once Appellant was informed Attorney Hanlon sought to withdraw from the case, the following conversation took place:

> THE COURT: Mr. Givens, your attorney . . . has filed a Motion to Withdraw for various reasons. I'm going to hear your thoughts on it.

> [APPELLANT]: Well, I mean, Your Honor, if she wants to withdraw then I'm not going to --

> THE COURT: Let me ask you this question. Before I appointed Mr. Lippert. He represented you at trial. Were you satisfied with his representation?

> [APPELLANT]: No, not at all, Your Honor.

> THE COURT: Well, but you do want appointed counsel.

> [APPELLANT]: Well, I'd prefer to represent myself if that would please the court.

> THE COURT: You certainly have that right.

[APPELLANT]: If it would please the court, I'd rather represent myself but I would like to have a commendation to make certain that I have a proper defense meaning that I would like to have time to prepare for the trial and to be able to call witnesses and prepare evidence.

(12/21/23 Status Hearing, pp. 2-3.)

{¶19} The parties agree that this is the sole discussion between Appellant and the court as it relates to the issue of self-representation. No written waiver of counsel was signed. At the hearing, the trial court made no other inquiries or oral advisements as to whether Appellant understood the associated risks of self-representation nor did the court engage in any type of colloquy with him. The court did not offer to find Appellant counsel other than Attorney Lippert, presenting Lippert as Appellant's only option. Again, we note that Appellant was facing a jury trial in this matter. It is somewhat unclear from this record whether Appellant truly wanted to represent himself or felt forced due to do so because the court offered no other choice than the appointment of an attorney with whom he had a prior bad relationship. Attorney Lippert is the only attorney named in this record that Appellant openly expressed he had an issue with. While Attorney Hanlon sought to terminate her representation because of an alleged breakdown in communication, it does not appear that Appellant wanted her to cease representation, as he essentially stated he would not hold her hostage if she asked to be dismissed.

{¶20} In the following hearing, which occurred on January 18, 2024, Appellant sought clarification as to whether he had been found competent. Appellant also filed a motion seeking "advisory counsel," which was addressed during this hearing. The court

Case No. 24 BE 0044

agreed to appoint the public defender to serve as advisory counsel. Again, there was no colloquy by the trial court on the pitfalls of self-representation.

**{¶21}** The state voiced concerns to the court with Appellant's ability to represent himself. In one instance, the state responded to two of Appellant's motions by explaining "[a]gain, Your Honor, this is a situation where his decision to proceed without counsel is detrimental because those two motions, for one, contradict one another." (1/18/24 Status Conference). The two motions to which the state refers are clearly in contradiction. In one, Appellant raises an entrapment defense, claiming he was enticed by the state to commit the offense. The other contains an alibi defense, claiming he was not present at the scene of the offense at the time it was committed.

**{¶22}** On February 22, 2024, the court held another hearing and Attorney Miller returned as an advisor. However, Attorney Miller sought to withdraw from even this limited role due to an alleged conflict in his office. Appellant was not made aware of the conflict prior to the hearing and sought to keep Attorney Miller in his advisory capacity. When learning that Attorney Miller allegedly could not continue to represent him, the following conversation occurred:

> THE COURT: Mr. Givens, I guess the question is you can proceed without advisory counsel but I've allowed you to have advisory counsel so I can certainly continue this to get you advisory counsel.
>
> [APPELLANT]: Yes, Your Honor, I would like advisory counsel as stated.

THE COURT: We don't have any lined up yet so we're going to have to do a little bit of a search.

[APPELLANT]: As I said, Your Honor, I'm sure there's plenty in Columbus waiting for cases like this.

(2/22/24 Motion to Withdraw Hearing Tr., p. 3.)

**{¶23}** At this stage, Appellant clearly indicated his preference for legal representation in some capacity. He acknowledged self-representation was challenging and that he did not possess the necessary skillset in this matter. While the court does make a comment that could be construed as an offer to appoint counsel to fully represent Appellant in this matter, it is not apparent that Appellant may have understood this offer:

THE COURT: . . . Mr. Givens has met with his new appointed advisory counsel. You're now asking for a continuance?

MR. D'ANDREA: Yes, Your Honor, we would ask for a continuance.

THE COURT: And that is because you just -- you want to get more deep into discussion with counsel.

[APPELLANT]: That's correct, Your Honor. There are some motions that are complex and I do need advisement.

THE COURT: And for the record too, Mr. Givens, if you're satisfied with Mr. D'Andrea, and wish to proceed with him as counsel I'll certainly entertain that as well.

Case No. 24 BE 0044

[APPELLANT]: Okay, Your Honor.

(3/7/24 Hearing Tr., p. 3.)

**{¶24}** During a March 14, 2024 hearing, Appellant consistently had difficulty navigating the legal process and repeatedly turned to his advisory counsel so counsel could attempt to explain the difference between civil and criminal proceedings. The record shows Appellant clearly failed to grasp the distinction and proceeded as though he was engaged in a civil dispute; for example, mentioning the need to add other necessary parties to the case in order to determine ownership of the property at issue. The state also noted problems with Appellant's continued self-representation, complaining that his request to hold a deposition was inconsistent with criminal law proceedings.

**{¶25}** Also relevant to the issue of the trial court's decision to allow Appellant to represent himself without fully engaging him in a colloquy are Appellant's competency evaluations. While Appellant was ultimately found competent to stand trial, the questions regarding competency lingered in this case. Appellant underwent two competency evaluations before the question of self-representation arose. The first was completed by Coleman Health Services. The evaluator was concerned enough to refer Appellant for further evaluation by a psychiatrist. Hence, the first evaluator declined to provide an opinion on the ultimate conclusion as to Appellant's competency to stand trial.

**{¶26}** The second evaluation, a psychiatric evaluation, was completed by Forensic Diagnostic Center of District Nine, Inc. The evaluator filed a report ultimately finding Appellant competent to stand trial. However, the second evaluator raised some areas of continuing concern.

**{¶27}** Following trial and after the jury's verdicts were read, the court stated its intention to "order a Coleman evaluation as an emergency basis at the jail." (Trial Tr., p. 300.) Clearly, the court continued to have concerns related to Appellant's competency, even after trial. The state acknowledged at sentencing that "I think the State's cognizant of the fact here that we're dealing with some serious mental health problems from the evaluation this court ordered and also the history of this individual." (Sentencing Hrg. Tr., p. 2.) Again, as part of Appellant's sentence another competency evaluation was ordered, however, it is unclear from the record if this amounted to a fourth evaluation, or if it was a reference to the evaluation the court ordered immediately prior to sentencing.

**{¶28}** While cases dealing with valid waivers of counsel are highly fact specific, two earlier cases from this Court provide guidance on the question. In a recent case where the *pro se* appellant faced a petty offense, we held that:

> Although Appellant affirmatively indicated he was proceeding pro se on two different dates, that is insufficient to constitute a knowing, voluntary, and intelligent waiver of counsel. When a trial court fails to advise a defendant on the record of the inherent dangers of proceeding pro se, waiver of the right to counsel cannot be inferred. *State v. Koons*, 7th Dist. Columbiana No. 06-CO-67, 2007-Ohio-4985, ¶ 46. In *Koons*, we found the trial court failed to inform the defendant about things, such as "the range of punishments he faced, possible defenses to the charge[s] . . ., or anything else" that would have apprised him of the inherent difficulties in self-representation. *Id.* at ¶ 57.

*State v. St. Thomas,* 2024-Ohio-2568, ¶ 24 (7th Dist.).

**{¶29}** The state's argument in this matter is largely premised on the fact that at some point before arraignment, Appellant indicated that he wished to represent himself and did not have faith in attorneys. Not only is this reliance questionable due to Appellant's several requests for counsel and standby counsel, but *St. Thomas* involved a scenario where the appellant clearly stated on the record that he wanted to represent himself. Regardless, his specific waiver of counsel was found to be in violation of Crim.R. 44(B) because the court failed to engage in the requisite colloquy with him prior to accepting that waiver. In the current matter, Appellant's statements as to self-representation are far less clear. Assuming, arguendo that Appellant had unequivocally stated he sought to waive counsel, his waiver would still not be effective unless and until the court had engaged in an explanation of the pitfalls of self-representation pursuant to Crim.R. 44(B).

**{¶30}** In contrast, in a second recent case, the appellant signed two waivers of counsel in the case and "made it absolutely clear to the court that he did not want an attorney and that his only concern was to expedite this matter so that the case would be resolved as quickly as possible." *State v. McBride,* 2024-Ohio-4870, ¶ 33 (7th Dist.). In addition to the written waivers, the appellant waived his right to counsel during a hearing. Prior to accepting the appellant's waiver, the record showed the trial court had given certain advisements:

> [T]hat the court could not give him legal advice, but could only explain
> the meaning of a no contest plea and what the next stage of the proceeding
> would be. The court explained that there would be no trial if he pleaded no

Case No. 24 BE 0044

contest and that the next step would be sentencing. The court explained more than once that if Appellant wanted to immediately plead no contest, he would do so without being advised by an attorney. The court explained that if he entered a plea of no contest at arraignment, he would be giving up the right to trial, to present a defense, to call witnesses, to have an attorney to assist him, and many other constitutional rights.

*Id.* at ¶ 25. On this basis, we determined the trial court in *McBride* had entered into the appropriate colloquy and provided the proper advisements to the appellant, in addition to obtaining two written waivers. Thus, we held the appellant had effectively waived his right to counsel and the requirements of Crim.R. 44(B) were fully satisfied.

**{¶31}** The state contends that Appellant has been involved in an abundance of *pro* se filings over the years and has filed many *pro se* appeals, which have resulted in the trial court declaring him a vexatious litigator. Hence, Appellant is very familiar with the legal system and its process. Significantly, however, those matters appear to have been entirely civil in nature. While there is little question that Appellant is litigious, there is a vast difference between the manner in which civil and criminal cases are conducted.

**{¶32}** It appears Appellant's sole involvement with the criminal system is comprised of ordinance violations and an earlier trespass case. There is no indication that Appellant represented himself during any meaningful stage of these criminal proceedings. Only one of his former legal matters proceeded to a jury trial in case number 21CRB00247E, and Appellant was represented by counsel during trial and on the subsequent, successful appeal. We note that case was far simpler than the instant

matter, as it involved only a single claim that Appellant trespassed on his neighbor's property, stepping on the neighbor's porch to drop off an envelope.

**{¶33}** The state posits that we are to engage in a "totality of the circumstances" review. This is not the law in Ohio on this question. While we recognize that Appellant's status as a vexatious litigator is troubling, and he clearly possesses more knowledge of the legal system than many laypersons and that his behavior was frustrating to both the state and the court, a trial court must at least engage in a colloquy with a defendant regarding the components of Crim.R. 44(B) and sufficiently inform him of the inherent dangers of proceeding *pro se* before accepting that defendant's waiver of representation and allowing that defendant to self-represent in a jury trial.

**{¶34}** Criminal defendants are rightfully afforded additional protections civil litigants are not, and we have recognized that Appellant's status as a vexatious litigator stems from his civil filings. The state posits that based on Appellant's history, any attempt to fully comply with the mandates of Crim.R. 44(B) would be futile. This is unsupported in the record, however, and is irrelevant. Ohio law mandates that a trial court must provide certain advisements, and failure to comport with this requirement is error. Further, this record shows that Appellant appeared to desire the appointment of counsel, but was ambivalent about the court's final choice of counsel. A clear explanation as to the challenges Appellant would face absent legal counsel may have caused his ambivalence to subside. The state also claims Appellant's constant dissatisfaction with certain of his counsel was evidence of a "stall tactic" on the part of Appellant. There is no evidence of this on the record, but we note an argument could be made that such behavior, coupled

with Appellant's obvious mental health concerns, should likely have triggered more of a colloquy with the court, not less.

**{¶35}** Pursuant to Ohio law, "the proper remedy when a defendant has been convicted of a petty offense, without the benefit of counsel and without a valid waiver of counsel, is to affirm the verdict but vacate any sentence of confinement." *St. Thomas* at ¶ 31, citing *State v. Bradley-Lewis*, 2020-Ohio-3563, ¶ 33 (11th Dist.). "The failure to comply with Crim.R. 44(B) is not fatal to the conviction because the rule controls the available punishment." *Id.,* citing *State v. Price*, 2015-Ohio-1199, ¶ 22-24 (7th Dist.); *Alabama v. Shelton*, 535 U.S. 654 (2002). Thus, the trial court's error in failing to provide the appropriate cautions and advisement to Appellant before deciding he had waived counsel does not affect the verdict, and only the sentence must be vacated. The matter is remanded for resentencing, however, the trial court cannot impose any sentence of confinement. This prohibition extends to a prohibition on the court's ability to impose any suspended sentence.

**{¶36}** As to the court's imposition of probation in this matter, Crim.R. 32.3 provides, in relevant part, "[i]f confinement after conviction was precluded by Crim. R. 44(B), revocation of probation shall not result in confinement." Thus, while imposition of probation can occur, pursuant to Crim.R. 44(B) no confinement can be imposed in the future should that probation be violated.

**{¶37}** We note that the court additionally ordered restitution in the amount of $168.96 as part of Appellant's sentence. Although a violation of Crim.R. 44(B), alone, does not appear to require vacation of a restitution order, this case is atypical. There are several considerations for the trial court on remand in this case. First, Appellant waived

his right to have the trial court hold a restitution hearing. While on its face this may not be noteworthy, Appellant was again without the assistance of counsel to advise him about this hearing and the impact of a waiver of his right to hearing. Appellant's indigency is also a matter of record in this case. The trial court recognized at several hearings that Appellant is unemployed and homeless. He has already served a fairly lengthy period of incarceration. Based on this record, restitution may be unwarranted at this juncture.

**{¶38}** As Appellant was not given the appropriate Crim.R.44(B) colloquy, the trial court erred in deciding Appellant validly and knowingly waived his right to counsel. Accordingly, Appellant's sole assignment of error has merit and is sustained.

Conclusion

**{¶39}** Appellant argues that the trial court failed to provide any advisements before allowing him to represent himself in this case. As the record reveals the court failed to provide any advisements prior to accepting Appellant's apparent waiver of counsel, his sole argument has merit. While Appellant's convictions are affirmed, his sentence is vacated with instructions to the trial court to resentence him without the possibility of confinement, which includes the ability to impose a suspended sentence.

Hanni, J. concurs.

Dickey, J. concurs.

Case No. 24 BE 0044

---

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Eastern Division, of Belmont County, Ohio, is reversed in part. Appellant's convictions are affirmed, but his sentence is hereby vacated. This matter is remanded to the trial court for resentencing without the possibility of ordering any confinement or a suspended sentence, according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**